**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ALAN S. CLOUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13-2885-STA-tmp** |
| | ) | |
| **STATE FARM MUTUAL** | ) | |
| **AUTOMOBILE INSURANCE** | ) | |
| **COMPANY, STATE FARM LIFE** | ) | |
| **INSURANCE COMPANY, STATE** | ) | |
| **FARM FIRE & CASUALTY** | ) | |
| **COMPANY, STATE FARM GENERAL** | ) | |
| **INSURANCE COMPANY d/b/a STATE** | ) | |
| **FARM INSURANCE COMPANIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS**
**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION TO AMEND COMPLAINT**

Before the Court is Defendants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire & Casualty Company, State Farm General Insurance Company d/b/a State Farm Insurance Companies' (hereinafter "Defendants" or "State Farm") Motion to Dismiss (D.E. # 11) filed on November 20, 2013. Plaintiff Alan G. Clough has responded in opposition (D.E. # 18), and Defendants have filed a reply brief (D.E. # 20). On January 22, 2014, Plaintiff filed a Motion for Leave to Amend his Amended Complaint (D.E. # 19), to which Defendants have responded in opposition (D.E. # 21). The briefing on the parties' Motions is now

complete, and the Motions are ripe for disposition. For the reasons set forth below, Defendants'

Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**. Plaintiff's Motion for Leave to

Amend is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

On October 17, 2013, Plaintiff filed suit in Shelby County, Tennessee Chancery Court,

alleging claims under the Tennessee Human Rights Act ("THRA") and Tennessee common law. On

November 13, 2013, Defendants removed the action to this Court on the basis of diversity

jurisdiction. According to Plaintiff's pleadings, Plaintiff was employed by Defendants as an

insurance agent from 1982 until 2012. Plaintiff alleges that he and Defendants entered into an

agreement whereby Plaintiff would be an independent contractor, though he could only serve the

interests of State Farm. (Am. Compl. ¶ 4.) Plaintiff further alleges that he was economically

dependent on State Farm for his livelihood and earned retirement and other benefits available to

employees of Defendants. (*Id.* ¶¶ 4, 5.) Plaintiff alleges that State Farm controlled his business

activities at all times throughout his career with State Farm. (*Id.* ¶ 4.)

The Amended Complaint alleges that beginning in 2012, State Farm began to pressure

Plaintiff to retire. (*Id.* ¶ 6.) Plaintiff initially resisted but ultimately agreed to retire in March 2013

because he felt he had no choice. (*Id.*) Then, on September 28, 2012, Plaintiff was involved in an

accident and suffered injuries, which required treatment at the Regional Medical Center in Memphis.

(*Id.* ¶ 7.) Although Plaintiff was in the intensive care unit and was not expected to live, Scott

Womack, State Farm's agency field executive for West Tennessee, visited Plaintiff in the hospital

and asked him questions about who was monitoring his agency affairs during his hospitalization.

(*Id.* ¶ 8.) Womack continued to visit Plaintiff at the hospital and pose questions to him about the

operation and conduct of his agency. (*Id.* ¶ 9.) The Amended Complaint alleges that Plaintiff was so upset and disturbed by these unwelcome visits, he demanded to be discharged from the hospital and left the Med at 1:00 a.m. (*Id.* ¶ 11.) Plaintiff attempted to return to work and discovered that Womack had been to his office and left a note reading "I was here at 10:00. Not open. <u>Not acceptable</u>." (*Id.* ¶ 13.)

On October 17, 2012, Plaintiff received a visit at his office from Deborah Thompson, State Farm's regional vice-president. (*Id.* ¶ 15.) The pleadings allege that Thompson was abrupt, rude, and unreasonable. (*Id.*) According to Plaintiff, Thompson was aware of his health and condition, including the extent of his injuries and the fact that Plaintiff was heavily medicated. (*Id.*) Thompson proceeded to demand that Plaintiff retire at the end of October 2012 and offered him $10,000.00 if he signed an agreement to retire and a release of all claims against State Farm. (*Id.*) Thompson told Plaintiff that if he decided not to retire by that date, State Farm would terminate him. (*Id.*) Thompson told Plaintiff that she would not leave his office until he signed the agreement. (*Id.*) Plaintiff alleges that he was unable to read the agreement, that the print appeared blurry, and that Plaintiff was taking oxycodone, morphine, cyclobenzaprine and other medications that afffected his ability to think and comprehend. (*Id.* ¶ 16.) When Plaintiff told Thompson that he did not understand what he was signing, Thompson called State Farm's in-house counsel, who attempted to explain the terms of the agreement to Plaintiff. (*Id.* ¶ 17.) Plaintiff finally signed the agreement, even though he had not read it and had not had an opportunity to have his own attorney review it. (*Id.* ¶ 18.) Based on these fact pleadings, Plaintiff has alleged that Defendants discriminated against him on the basis of age and disability in violation of the THRA. Plaintiff has also asserted a claim for the intentional infliction of emotional distress.

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to plead his claims with sufficient particularity and therefore dismissal is required. First, Defendants contend that Plaintiff has not alleged all of the elements of a claim for age discrimination under the THRA. The THRA applies only to "employers" and thus protects only "employees." State Farm argues that Plaintiff was never an employee, only an independent contractor. As such, the THRA would not apply to him. Additionally, Defendants argue that Plaintiff has not alleged that he was replaced by a non-protected employee. The Court should hold then that the Amended Complaint fails to state an age discrimination claim. Second, Defendants contend that the THRA does not create a cause of action for disability discrimination, making any claim of that kind subject to dismissal. Third, Defendants argue that Plaintiff has failed to allege facts or conduct of an outrageous character to support his claim for the intentional infliction of emotional distress. Finally, Defendants argue that the Court should enforce the release signed by Plaintiff and dismiss Plaintiff's claims against State Farm. Plaintiff has not alleged sufficient facts to show that he signed the release under duress or coercion. Furthermore, Plaintiff should be required to tender the $10,000.00 he accepted in consideration for signing the release before the Court permits him to repudiate the agreement. For all of these reasons, Defendants seek the dismissal of Plaintiff's Amended Complaint.

In his response in opposition, Plaintiff argues that he has properly pleaded all of his claims. Plaintiff asserts that his factual averment that State Farm controlled his business activities is sufficient to show that he was an "employee." Plaintiff briefs the common law test for agency as well as the multi-factor tests used by the Department of Labor and the Internal Revenue Service to determine whether an individual is an "employee." While Plaintiff stands on the "control" pleadings in his Amended Complaint, Plaintiff also argues that discovery will show State Farm exerted

"tremendous control over its agents." With respect to Defendants' argument that Plaintiff must allege how non-protected employees received more favorable treatment, Plaintiff agrees and argues that his proposed second amended complaint will cure this defect. The Court considers the merits of Plaintiff's Motion for Leave to Amend below. Likewise, Plaintiff seeks leave to amend his pleadings to clarify that his disability claim is based on the Tennessee Disability Act ("the TDA") as well as the THRA. Plaintiff goes on to argue the merits of his pleadings on his IIED claim, stressing his allegations about Womack entering the ICU to question Plaintiff about his business affairs and the emotional distress he suffered as a result of the actions taken by Womack and Thompson. Plaintiff contends that he long endured severe and pervasive harassment.

As for the enforceability of the settlement agreement and release, Plaintiff argues that the agreement was a contract of adhesion signed under duress. Plaintiff further argues that the release violates the Older Workers Benefit Protection Act, which sets forth procedural requirements for settling claims based on age discrimination. For instance, under the federal act, Plaintiff should have been given notice in writing to consult with an attorney, the chance to consider the agreement for 21 days, and the opportunity to revoke the agreement within 7 days of signing it. Plaintiff contends then that the agreement he signed does not comply with federal law. The Supreme Court has held that a protected individual was not required to tender any consideration received for a waiver of rights where the release did not comply with federal law. Therefore, Defendants' Motion to Dismiss should be denied.

In their reply brief, Defendants reiterate their argument that Plaintiff has only alleged "control" in conclusory fashion and has not pleaded sufficient facts to support the allegation. Defendants argue that Plaintiff is not entitled to any discovery until he has plausibly alleged his

claim. Defendants also reiterate their position on Plaintiff's IIED claim, that Plaintiff has not alleged facts that rise to the level of an IIED claim. In response to Plaintiff's argument about the enforceability of the release, Defendants contend that Plaintiff has relied on principles from the federal Older Workers Benefit Protection Act but without actually alleging a claim under that act. Defendants argue that Tennessee law is not substantively identical to federal law in all respects. Therefore, Plaintiff's reliance on the Older Workers Benefit Protection Act is misplaced.

As previously mentioned, Plaintiff has also filed a Motion for Leave to Amend in response to Defendants' Motion to Dismiss. Plaintiff has submitted his proposed second amended complaint, though Plaintiff has not filed a memorandum in support of his Motion showing why leave to amend should be granted. Defendants have filed a response in opposition, highlighting that the proposed amended pleadings only add statutory citations to the Tennessee Disability Act as well as what appears to be a claim for hostile work environment. Defendants argue that leave to file the proposed amended complaint should be denied because the amendments are futile.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[1] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[2] "To avoid dismissal

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3]  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[5]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

## ANALYSIS

### I. Defendants' Motion to Dismiss

### A. Age Discrimination in Violation of the THRA

The Court holds that Plaintiff's Amended Complaint plausibly alleges a claim for age discrimination under the THRA.  Defendants first argue that the Amended Complaint fails to allege that State Farm was Clough's "employer" because Clough was actually an independent contractor.

---

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[6] *Twombly*, 550 U.S. at 555, 570.

[7] *Iqbal,* 556 U.S. at 678.

This means the THRA's protections against age discrimination would not apply to Plaintiff. The determination of whether an individual qualifies as an employee is a mixed question of law and fact that "a judge normally can make as a matter of law."[8] In *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992), the Supreme Court adopted a common law agency test for determining whether an individual is an employee for purposes of ERISA. The Sixth Circuit has held that *Darden*'s common law agency test is also the proper inquiry for determining whether an individual is an employee or an independent contractor for purposes of the federal Age Discrimination in Employment Act ("ADEA").[9] Because courts "apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA," the Court will apply the common law agency test to analyze whether Plaintiff is an employee or an independent contractor in this case.[10]

Under common law agency principles, the inquiry depends on "the hiring party's right to control the manner and means by which the product is accomplished."[11] The *Darden* court enumerated the following list of non-exclusive and non-dispositive factors to guide the inquiry:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of

---

[8] *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004).

[9] *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004).

[10] *Scola v. Publix Supermarkets, Inc.*, No. 12-6458, 2014 WL 756708, at *13 (6th Cir. Feb. 27, 2014).

[11] *Darden*, 503 U.S. at 323.

employee benefits; and the tax treatment of the hired party.[12]

"[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive."[13]

The Sixth Circuit has held in a series of cases that insurance agents like Clough are independent contractors, and not employees, but only at summary judgment and based on a complete analysis of the *Darden* factors after a full opportunity for discovery.[14]  Defendants argue that Plaintiff's pleadings contain only the barest allegations concerning these factors, namely, State Farm's control over Plaintiff's duties as an agent.  However, the Amended Complaint actually alleges that Plaintiff served as an exclusive agent for State Farm, that he could not sell policies offered by other insurance companies, that he was economically dependent on State Farm and received employee benefits from State Farm, and that he could serve only the interests of State Farm.[15]  Plaintiff has also alleged that other State Farm employees, including State Farm's agency field executive, monitored Plaintiff's business hours and questioned Plaintiff about the operation of his office.[16]  It is true that the Amended Complaint acknowledges the agreement between Clough and

---

[12] *Id.* at 323–24.

[13] *Id.* at 324.

[14] *Id.*; *see also Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir. 2008) (insurance agent was an independent contractor for purposes of ADA coverage); *Ware v. United States,* 67 F.3d 574 (6th Cir. 1995) (insurance agent was an independent contractor for tax purposes); *Wolcott v. Nationwide Mut. Ins. Co.,* 884 F.2d 245 (6th Cir.1989) (insurance agent was an independent contractor under ERISA); *Plazzo v. Nationwide Mut. Ins. Co.,* 892 F.2d 79, 1989 WL 154816 (6th Cir. Dec. 22, 1989) (unpublished opinion) (same).

[15] Am. Compl. ¶ 4.

[16] *Id.* ¶¶ 8, 13.

State Farm and admits that under the agreement Clough was deemed an independent contractor.[17]

The Sixth Circuit has held that in assessing whether an individual is an independent contractor or

an employee, "any express agreement between the parties as to their status . . . is the best evidence

of their intent."[18] While the parties' agreement is "certainly relevant," a written agreement alone is

"not dispositive of the issue."[19] The Court concludes that at least at the pleadings stage, Plaintiff has

alleged enough factual content to create a reasonable inference that Plaintiff was Defendants'

employee.

Defendants next argue that Plaintiff has failed to state a claim because his Complaint does

not allege all of the elements of a THRA age discrimination claim. In *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506 (U.S. 2002), the Supreme Court ruled that a complaint for employment discrimination

need not include specific facts establishing a prima facie case of discrimination under the *McDonnell*

*Douglas* framework.[20] The Supreme Court stated that *McDonnell Douglas* is an evidentiary

standard, not a pleading requirement.[21] Instead claims brought under Title VII are analyzed under

---

[17] *Id.* ¶ 4.

[18] *Janette*, 298 F. App'x at 471 (citing *Weary,* 377 F.3d at 525; *Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996); *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 218 (6th Cir. 1992)).

[19] *Weary,* 377 F.3d at 525.

[20] *Swierkiewicz*, 534 U.S. at 508 (rev'g *Jackson v. Columbus*, 194 F.3d 737 (6th Cir. 1999)).

[21] *Id.* at 510-12 ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").

the ordinary notice pleading standards set forth in Fed. R. Civ. P. 8(a)(2).[22]  That Rule requires that

a claim shall contain "a short and plain statement of the claim showing that the pleader is entitled

to relief."[23]  The statement must "give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests."[24]  Applying this standard to the *Swierkiewicz* petitioner's

complaint, the Supreme Court found that the complaint "easily satisfie(d) the requirements of Rule

8(a) because it g(a)ve respondent fair notice of the basis for petitioner's claims" for nationality

discrimination.[25]  The Supreme Court found that the complaint "detailed the events leading to

(petitioner's) termination, provided relevant dates, and included the ages and nationalities of at least

some of the relevant persons involved with his termination."[26]  In short, the Supreme Court

concluded that the complaint gave the defendant fair notice of the claims and the grounds upon

which they rested, which was enough to survive a Rule 12(b)(6) motion.[27]

In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead

all of the elements of the prima facie case in order to survive a motion to dismiss.[28]  In this regard,

Plaintiff's Amended Complaint need not allege how similarly situated, non-protected employees

---

[22] *Id*.

[23] Fed. R. Civ. P. 8(a)(2).

[24] *Swierkiewicz*, 534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[25] *Id*. at 514.

[26] *Id*.  The petitioner in *Swierkiewicz* who was Hungarian alleged that his company which was a French entity discriminated against him on the basis of his national origin.

[27] *Id*.

[28] *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 584 (6th Cir. 2012) ("To survive a motion to dismiss, Rhodes need not establish a prima facie case to satisfy the pleading standards.").

received more favorable treatment.[29] Defendants have cited no legal authority to the contrary, and the Sixth Circuit has recently confirmed that *Swierkiewicz* remains good law in the aftermath of *Twombly* and *Iqbal*.[30] Otherwise, Plaintiff's Amended Complaint satisfies his "slight" burden at the pleadings stage.[31] While "questions concerning an employee's retirement plans do not alone constitute direct evidence of age discrimination,"[32] Plaintiff has alleged that two different State Farm executives pushed or pressured him to take early retirement, even threatening that if he did not retire, State Farm would terminate him.[33] The Sixth Circuit has suggested that evidence of this kind of employer conduct creates an inference of age discrimination.[34] The Court holds then that Plaintiff has alleged a plausible claim. Therefore, Defendants' Motion to Dismiss is **DENIED** as to

---

[29] Plaintiff argues in support of his Motion to Amend that he can cure this defect by amending his pleadings. The Court need not decide whether the proposed second amended complaint would add plausible factual content to allege that younger employees received more favorable treatment than Plaintiff.

[30] *Serrano v. Cintas Corp.*, 699 F.3d 884, 894–95 (6th Cir. 2013).

[31] *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 619 (6th Cir. 2013).

[32] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012).

[33] Am. Compl. ¶¶ 6, 15.

[34] *Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 247 (6th Cir. 1997) (stating that inquiries by a supervisor or decision-maker regarding plans for retirement, which are not near in time to the adverse employment decision and do not suggest pressure to retire, are not sufficient to constitute direct evidence of age discrimination); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1394 (6th Cir. 1993) ("Statements requesting employees to retire because of their age suggest an illegitimate motive."); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991) ("Absent testimony that Klein took active steps to push Wilson toward retirement based on an improper discriminatory motive, no factual issue can be gleaned from Wilson's statement which might have led a reasonable jury to find in his favor on the ADEA claim."); *Danielson v. City of Lorain*, 938 F.2d 681, 684–85 (6th Cir. 1991) (stating an employer's comment that the plaintiff should consider retirement due to her age was "strong evidence of an illegitimate motive"); *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 80 (E.D. Mich. 2013).

Plaintiff's age discrimination claim.

**B. Disability Discrimination in Violation of the THRA**

Turning to Plaintiff's claim for disability discrimination under the THRA, the Court holds that Plaintiff has failed to state a claim. Defendants argue that the THRA does not include protection against discrimination on the basis of a disability. Courts applying Tennessee law have uniformly held that "[d]iscrimination claims under state law arising from an adverse employment action are properly brought pursuant to the TDA, rather than the THRA."[35] The fact remains that the "TDA works in conjunction with the THRA to grant an individual a civil cause of action for wrongful discrimination based upon a disability," and as such "disability claims alleged under the THRA have been treated as being alleged under the TDA."[36] The Amended Complaint alleges that State Farm discriminated against Plaintiff due to his disability in violation of the THRA. In his Motion for Leave to Amend, Plaintiff seeks leave to add references to the TDA in his pleadings, an amendment which would cure the defect in the Amended Complaint identified by Defendants. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's disability claim under the THRA.

**C. IIED**

---

[35] *E.g. Thompson v. UGL Unicco Serv. Co.*, 750 F. Supp. 2d 907, 912–13 (W.D. Tenn. 2010) (Mays, J.) *aff'd sub nom. Thompson v. UGL Unicco*, 472 F. App'x 396 (6th Cir. 2012); *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on different grounds by Gossett v. Tractor Supply Co.,* 320 S.W.3d 777 (Tenn. 2010)); *see Perlberg v. Brencor Asset Mgmt., Inc.,* 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001) ("The employment-related part of the THRA does not expressly apply to claims of discrimination based upon a disability. Instead, an employee is protected from an adverse employment decision based upon a disability under the [TDA]").

[36] *Whited v. Cmty. Bank of the Cumberlands, Inc.,* No. 2–08–0061, 2010 WL 605280, at *8 (M.D. Tenn. Feb. 18, 2010).

To prove a claim for IIED, Plaintiff must show that: (1) the conduct complained of was intentional or reckless, (2) it was so outrageous that it is not tolerated by a civilized society, and (3) it resulted in serious mental injury.[37]  Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities."[38]  Thus, a plaintiff seeking damages for IIED must meet "an exacting standard," one which requires a plaintiff to prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."[39]  "Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it."[40]  "It is for the Court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so."[41]

The Court holds that Plaintiff has failed to allege a plausible claim for the intentional infliction of emotional distress.  Plaintiff argues that the facts supporting his IIED claim include Womack's visit to Plaintiff's ICU room and Thompson's hard bargaining to pressure Plaintiff to retire and sign the release.  In addition to pleading his own mental state following these events, the

---

[37] *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

[38] *Id.* (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)); *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003).

[39] *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[40] *Arnett*, 124 S.W.3d at 540.

[41] *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966) (quoting Restatement (Second) of Torts, § 46, cmt. 77).

only specific allegations made in support of Plaintiff's IIED claim are as follows: "The conduct complained of was outrageous, not tolerated in civilized society and resulted in serious mental injury;" "The extreme and outrageous character of Defendants' conduct, including the actions of its agents and employees, would cause a reasonable, normally constituted person to exclaim outrage;" and "Defendants, by and through its agents, managers and employees, have acted intentionally, maliciously and recklessly."[42]   The Court holds that Plaintiff has merely set out "a formulaic recitation of the elements of a cause of action" for IIED.[43]   Plaintiff's claims relate to the circumstances surrounding the end of his tenure as a State Farm insurance agent and Plaintiff's claim that State Farm discriminated against him on the basis of his age and disability.   Typically, discrimination or termination of one's employment is insufficient to prove an IIED claim.[44]   As a result, Plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]   Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's IIED claim.

## D. Enforcement of Plaintiff's Signed Release

In their final argument in favor of dismissal, Defendants invoke the signed release of all claims signed by Plaintiff in October 2012.   Plaintiff has attached a copy of the agreement to his pleadings, making it proper for the Court to consider the contract in deciding Defendants' Motion

---

[42] Am. Compl. ¶¶ 25, 26, 28.

[43] *Reilly*, 680 F.3d at 622 (quoting *Twombly*, 550 U.S. at 555)).

[44] *Nettles v. Hotel Peabody, G.P.*, No. 2:09-CV-02776-JPM, 2010 WL 5093362, at *3 (W.D. Tenn. Dec. 8, 2010) (citations omitted).

[45] *Iqbal,* 556 U.S. at 678.

to Dismiss without converting the Motion to a motion for summary judgment.[46]  According to the document, Plaintiff agreed to release all claims related to "his contractual relationship as an independent contractor insurance agent of the Company."[47]  The Sixth Circuit has held that "release is an affirmative defense that must be pled by the defendant, which includes showing that the release was fairly executed and fairly represented the amount to which the claimant was entitled."[48]  Once a defendant has raised release as an affirmative defense, a plaintiff may prove the "the invalidity of the release, which can be done by showing mistake, incapacity, fraud, misrepresentation, unconscionability, or duress."[49]  "[W]hether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally."[50] Assuming Tennessee law applies to the parties' dispute over the validity of the release, "a contractual release of claims will be enforced in Tennessee consistent with the parties' intent as stated in the relevant agreement" unless a party to the release proves fraud, duress, "or some other defense to enforceability."[51]

---

[46] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[47] Agreement & Release 2, ex. A, Am. Compl.

[48] *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1108 (6th Cir. 2010) (applying Kentucky law but also citing 66 Am. Jur. 2d *Release* §§ 40–41; 76 C.J.S. *Release* § 84 ("The burden of establishing a release is on the party relying on it, but, where a release . . . is established, the opposing party has the burden of proving facts rendering the release void.").

[49] *Id.*

[50] *Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992).

[51] *Siddle v. Crants,* No. 3:09–0175, 2010 WL 424906, at *5 (M.D. Tenn. Jan. 25, 2010) (citing *Bratton v. Bratton,* 136 S.W.3d 595, 601 (Tenn.2004)); *see also Wysocki*, 607 F.3d at 1108 (citing Williston on Contracts § 73:14 (4th ed.)).

The Court holds that dismissal of Plaintiffs' claims on the basis of the release would not be appropriate at the pleadings stage. Courts are "reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted."[52] Moreover, the Amended Complaint has plausibly alleged that Plaintiff signed the release under duress or some other incapacity. Duress is "a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure."[53] Whether such pressure existed at the time of contract formation "is a question to be determined by the age, sex, intelligence, experience and force of will of the party, the nature of the act, and all the attendant facts and circumstances."[54] Plaintiff alleges that he was in serious pain and heavily medicated at the time he signed the agreement and that he was unable to read the contract or consult an attorney before he signed it. Whether Plaintiff can ultimately prove it his allegation of duress "should be determined on a motion under Rule 56 or at trial, once the facts are developed."[55] Therefore, Defendants' Motion to Dismiss is **DENIED** as to this issue.

## II. Plaintiff's Motion for Leave to Amend

In response to Defendants' Motion to Dismiss, Plaintiff has filed a Motion for Leave to Amend and filed a second amended complaint. The Court finds good cause to grant Plaintiff's

---

[52] *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012).

[53] *Barnes v. Barnes*, 193 S.W.3d 495, 500 (Tenn. 2006).

[54] *Id.*

[55] *Venture Global Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 730 F.3d 580, 589 (6th Cir. 2013).

Motion for Leave to Amend his pleadings but only in part. A pleading may be amended only "with the opposing party's written consent or by the court's leave."[56] Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave when justice so requires."[57] The Sixth Circuit has held that a motion to amend should be denied where the motion is "brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."[58] Here Plaintiff has sought leave to add a reference to the Tennessee Disability Act, Tenn. Code Ann. § 8–50–103, clarifying that his disability discrimination claim is brought pursuant to the TDA. As previously discussed, the Court is dismissing Plaintiff's THRA disability claim and allowing Plaintiff to amend his pleadings to add this statutory citation. Therefore, Plaintiff's Motion is **GRANTED** as to this proposed amendment.

Plaintiff's only other proposed amendment would add the following paragraph to his pleadings:

> Defendants further subjected Clough to constant harassment (hostile environment) on account is his age, in violation of the THRA. Said acts of harassment were uninvited, and caused Clough's work performance to suffer. Younger agents were not treated the way Clough was treated. Clough was forced to take early retirement against his will; younger agents were not treated this way. Thus, other similarly-situated employees outside of Plaintiff's protected class (over 40) were treated better.[59]

---

[56] Fed. R. Civ. P. 15(a)(2).

[57] *Id.*

[58] *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (citation omitted); *see also New Albany Tractor, Inc v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1052 (6th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[59] Proposed Second Am. Compl., ex. A, Pl.'s Mot. for Leave to Am.

Plaintiff apparently proposes this new allegation to add a hostile work environment claim.[60] The Court holds this claim would not survive a Rule 12(b)(6) motion, and as such the proposed claim is futile. It is well-established that a "trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Federal Rules of Civil Procedure 15(a) and deny the motion if amendment would be futile."[61] A proposed amended pleading is futile if the amended pleading would not withstand a motion to dismiss pursuant to Rule 12(b)(6).[62]

In order to prove a hostile work environment claim under the THRA, Plaintiff must show that he was harassed on the basis of his age and that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[63] In the Title VII context, the Court must look at the totality of the circumstances to analyze whether the harassment was sufficiently severe or pervasive.[64] Appropriate factors to consider include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

---

[60] To the extent that Plaintiff proposes these allegations to buttress his age discrimination claim, the Court finds that the additional factual matters are not necessary in order to state a plausible claim.

[61] *Kindle Bldg. Co. v. Ford Motor Co.*, 17 F. Supp. 2d 701, 705 (N.D. Ohio 1997) (citing 6 Charles A Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1487 at 432-33 (1971)).

[62] *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (citation omitted).

[63] *Scola*, 2014 WL 756708, at *13 (6th Cir. Feb. 27, 2014) (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996)).

[64] *Clay v. UPS*, 501 F.3d 695, 707 (6th Cir. 2007) (citation and quotation makes omitted).

an employee's work performance."[65]  "Isolated incidents. . . , unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment."[66]

The Court holds that Plaintiff's proposed amendment, along with the other allegations in his current pleadings, simply do not rise to this level.  Plaintiff has alleged only a series of discrete incidents from 2012: discussions with Womack about Plaintiff's retirement plans; Womack's visits to Plaintiff's hospital room; and Thompson's visit to Plaintiff's office essentially to demand his resignation/retirement.  Over his thirty-year tenure with State Farm, Plaintiff has alleged only these sporadic episodes from 2012.  The Court holds that the facts alleged do not plausibly suggest Defendants created a severely and pervasively hostile work environment for Plaintiff on the basis of his age.  With respect to Plaintiff's discussions with Womack about his plans for retirement, the Amended Complaint alleges that Plaintiff agreed in 2012 to retire in March 2013.[67]  Nothing in the pleadings shows that once Plaintiff agreed to retire, Womack persisted in pushing Plaintiff to move his retirement up further or, more importantly, behaved in an objectively hostile manner towards Plaintiff because of his age.  As for the allegations about Womack's visits to Plaintiff's hospital room, the Amended Complaint does not allege that Womack made any remarks concerning Plaintiff's age during the visits.  Womack questioned Plaintiff's about his office practices asking who was answering the phone, presumably while Plaintiff was in the hospital.[68]  Perhaps these allegations suggest lack of tact or compassion; however, they do not suggest harassment on the basis

---

[65] *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[66] *Bowman v. Shawnee St. Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

[67] Am. Compl. ¶ 6.

[68] *Id.* ¶¶ 8–9.

of age. Plaintiff is left to rely on his allegation about Thompson's demand that Plaintiff resign or retire, a single incident that ended in Plaintiff's agreement to retire. The Court concludes that Plaintiff's proposed amendment to add this claim would be futile because Plaintiff's hostile work environment claim could not withstand a motion to dismiss. Therefore, Plaintiff's Motion for Leave to Amend is **DENIED** as to these allegations.

## CONCLUSION

The Court holds that Plaintiff has alleged plausible claims for age discrimination under the THRA and disability discrimination under the TDA. Plaintiff has alleged enough factual matter to show that he was a State Farm employee, and not an independent contractor, and that he signed his agreement to retire under duress and incapacity. Plaintiff has not alleged a plausible claim for IIED or disability discrimination under the THRA. Therefore, Defendants' Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**. Plaintiff has shown good cause to amend his pleadings to add statutory references to the TDA. Plaintiff's proposed hostile work environment claim, however, would be futile. Therefore, Plaintiff's Motion for Leave to Amend is **GRANTED IN PART, DENIED IN PART**.

   **IT IS SO ORDERED.**

         **s/ S. Thomas Anderson**
         S. THOMAS ANDERSON
         UNITED STATES DISTRICT JUDGE

         Date: March 28, 2014.